IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HASAN A. HAJMOHAMMAD, | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:08-CV-0021-BD |
| | § | Referred to U.S. Magistrate Judge |
| | § | |
| LISA KEHL, District Director, | § | |
| U.S. Citizenship and Immigration | § | |
| Services, Et Al., | § | **ECF** |
| Defendants. | § | |

**DEFENDANTS' PROPOSED FINDINGS OF FACT**

Defendants file these proposed findings of fact, which are submitted in addition to the stipulated facts presented n the pretrial order:

1. Hajmohammad is a native and citizen of Jordan.

2. On August 15, 1988, he was admitted as an F-1 nonimmigrant student, with his visa being valid for the duration of his status as a student.

3. On May 8, 1996, Hajmohammad signed a trust agreement as one of three trustees of the Islamic Trust of North Texas (Baitul Mal).

4. On August 12, 1996, Hajmohammad signed and filed an I-360 petition for a religious worker immigrant visa to work as the Director of Education and Library Services of Islamic Trust of North Texas.

Defendants' Proposed Findings of Fact - Page 1

5. The self-petition was supported by a June 28, 1996, letter explaining the job offer to him as a "Director of Education and Library Services" for "the maintenance and establishment of religious libraries (Muslim) and dissemination and publication of religious material" and other duties as assigned, including religious teaching to children, fund raising, issues arising from Islamic burials, and general library management.

6. The birth certificate he submitted with his I-360 stated his parents were Palestinians.

7. The I-360 visa was approved on November 5, 1996.

8. On November 27, 1996, Hajmohammad filed an I-485 application to adjust his status based on his approved I-360.

9. On April 3, 1998, his status was adjusted to that of a lawful permanent resident.

10. On June 25, 2003, Hajmohammad submitted an Application for Naturalization (N-400) with the Texas Service Center.

11. The birth certificate he submitted with his N-400 stated his parents were Jordanians.

12. In April, 2002, Hajmohammad demonstrated against the Israeli Prime Minister and assaulted a person in another group that had a sign that read "Expel PLO from Israel, Arafat is a Baby killer." The case was dismissed a year later.

13. On July 9, 2003, USCIS submitted a request for a background security name check to the FBI.

14. On May 5, 2008, USCIS received the FBI's response to the name check request and began processing the case.

15. On August 13, 2008, USCIS Officers tried to determine a physical address for the Baitul Mal. The officers conducted a site visit to Islamic Trust of North Texas (Baitul Mal) at an address listed in the N-400, 415 E. Airport Freeway, Irving, TX 75062 but found that it is no longer located at that address.

16. On August 14, 2008, USCIS Officers contacted the Dallas Police Department about a police report relating to its arrest and citation of Hajmohammad for an assault during a demonstration on April 11, 2002, at the Anatole Hotel in Dallas, Texas.

17. On August 18, 2008, USCIS officers obtained certified copies of the arrest records and report regarding the April 11, 2002, incident. The report states that Hajmohammad grabbed the complainant by the neck and began to hit him in the face with his fist and was separated from the complainant by a police officer. On August 19, 2008, a USCIS officer interviewed the victim of the assault, who confirmed the report.

18. On August 18, 2008, USCIS served Hajmohammad with a "Notice of Intent to Revoke" his immigrant status and gave him five days to submit evidence in support of the petition.

19. On August 22, 2008, Hajmohammad responded to the Notice of Intent to Revoke.

20. During the processing of this case, USCIS discovered that the evidence Hajmohammad submitted to support his 1996 I-360 petition for an immigrant visa failed to establish his eligibility for the visa.

21. On August 27, 2008, USCIS determined that the newly-submitted material failed to support his eligibility for the immigrant visa.

22. On August 27, 2008, USCIS denied his N-400 because it issued a Notice to Appear.

23. September 6, 2008, was the 120th day from May 5, 2008.

24. As part of his I-360 application, Hajmohammad attached a letter of recommendation (for library, fundraising, etc.) from the Muslim Arab Youth Association.

25. As part of his I-360 application, Hajmohammad attached a letter of recommendation from the Islamic Trust of North Texas (Baitul Mal) which states that he had written for Al-Muslim magazine.

26. On his N-400, he states he is a member of ISNA, Muslim Arab Youth Association, and the Islamic Trust of North Texas (Baitul Mal).

27. On his N-400, he states the is one of three trustees for Baitul Mal.

28. The Muslim Brotherhood archives, obtained through a search warrant in Cause No. 3:04-CR-240-G, and also published on the internet, explain its secret "Strategic Goals for the Group in North America." An Explanatory Memorandum On the General Strategic Goal for the Group in North America, one the documents in the

archives, states its goal as:

> eliminating and destroying the Western civilization from within and 'sabotaging' its miserable house by their hands and the hands of the believers so that it is eliminated and God's religion is made victorious over all regions. Without this level of understanding, we are not up to this challenge and have not prepared ourselves for Jihad yet. It is a Muslim's destiny to perform Jihad and work wherever he is and wherever he lands until the final hour comes, and there is no escape from that destiny except for those who chose to slack. But, would the slackers and the Mujahedeen be equal.

29. Attached to the "Explanatory Memorandum On the General Strategic Goal for the Group in North America" is a list of the groups that are members of the Muslim Brotherhood. Included on the list of members is ISNA, Muslim Arab Youth Association, and the Islamic Trust of North Texas (Baitul Mal).

30. The Transcript of a speech of Zeid Al-Norman, leader of the American Branch of the Muslim Brotherhood, also found in the archives and seized pursuant to the search warrant, further explained the implementation of the goals as:

> "special work" means military work.  … Monitoring the suspicious movements or the sides, the government bodies such as the CIA, FBI, etc. so that we can find out if they are monitoring us, are we not being monitored, how can we get rid of them . . . It is not possible to have military training in Jordan, for instance, while here in America there is weapons training in many of the Ikhwan camps.

31. Al-Norman also explained in the documents that in some areas, like Oklahoma, weapons training has become more difficult because the authorities "started to get strict about letting Muslims use the camps. They would ask them, for instance to submit their name and they would ask you to bring an ID or something to prove our

Defendants' Proposed Findings of Fact - Page 5

name" but that "here in Missouri" the Brothers could still "request a camp that has a range, a shooting range."

32. The transcript also reveals that "the group which issues Al-Muslim Magazine . . . is a political front which was set up by the Libyan brothers in order to be able to move through it and issue Al-Muslim magazine.  Yes, this front is overseen by brothers from Ikhwans [Muslim Brotherhood]. . . .  They are associated with the Group and they are affiliated with the Group.  And the Group directs the path of this group and this  . . . this front."

33. USCIS has had less than 120 days since the name check was completed to process Hajmohammad's N-400 application.

34. It is USCIS' responsibility to determine the immigration effects of background investigations, the applicants' residences, physical presence, good moral character, knowledge of English and civics, and attachment to the Constitution.

35. Often, adverse information related to an applicant that is obtained through a security check requires further inquiry by USCIS including consulting with the originating agency to determine whether the information is relevant to the aliens' eligibility for naturalization or may lead to other information bearing on eligibility.

36. The complete background check process includes, but is not limited to, the security checks.  USCIS often must interview or re-interview an applicant and /or beneficiary or others, request a field investigation, and/or gather more information.

Defendants' Proposed Findings of Fact - Page 6

37. The background checks are not considered complete until USCIS completes a comprehensive review of any identified criminal or national security issues and resolves such issues. USCIS then completes the investigation and the adjudication, issues its decision, and takes any further appropriate action.

38. Hajmohammad's status as a lawful permanent resident is in question.

> Respectfully submitted,
>
> RICHARD B. ROPER
> UNITED STATES ATTORNEY
>
>  /s/ *Angie L. Henson*
> ANGIE L. HENSON
> Assistant United States Attorney
> 1100 Commerce St., Suite 300
> Dallas, Texas  75242
> Texas Bar No. 09492900
> Telephone:  214.659.8600
> Fax: 214.767.2916
> Email: Angie.Henson@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on August 29, 2008, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I also certify that a copy of this document was served on Hussein A. Abdelhadi, Counsel for Plaintiff Hasan Hajmohammad, at 4144 N. Central Expressway, Suite 1210, Dallas, Texas 75204, by first class mail.

      /s/ *Angie L. Henson*
      ANGIE L. HENSON
      Assistant United States Attorney